Good morning, Your Honors. May it please the Court, my name is Antonio Yun and I represent the Appellant Stephen Willard. The State Court's application of the facts in this case was objectively unreasonable because the Appellant Steve Willard was clearly prejudiced when his trial counsel failed to call the key alibi witness. The State Courts, the lower State Courts in this case, found that they did not discuss whether or not trial counsel's performance had been deficient. And although I discussed it in my opening brief, the Attorney General's Office did not discuss it, so I'm going to go with the prejudice prong unless the Court has any questions regarding the deficiency of the performance of Mr. Willard's counsel. The State Courts found that no prejudice, Mr. Willard had suffered no prejudice because there had been a lapse of 45 minutes that had passed between the last time that the Appellant was seen at the Imperial Beach Bar and the time that the robbery, or the burglary, I'm sorry, was committed. That is objectively unreasonable because it is factually incorrect. There was one person, the neighbor of the Appellant, who was the prosecution's sole witness. And that person was a woman by the name of Holt, and she testified that she had heard Steve Willard, who was also her neighbor, sometime outside their apartment around 810, 815, or 830. She couldn't precisely remember the times. During the television program that she was acquainted with. Right, and I would note that the television program that she remembered was COPS, and she remembered that the day of the trial. She did not remember that when she was interviewed after the Appellant's arrest by Detective Hendron. As a matter of fact, Detective Hendron testified that after the arrest, he interviewed Ms. Holt. And Ms. Holt said that she had seen, or no, she had heard, she never saw, she had seen the Appellant at around 8 to 815. The trial testimony then becomes 8 to 830, and after the prosecution questions her, how does she remember it, she says, I think I was watching COPS, and that's why I remember that it was probably up to 830. Let me just ask you a question. If we put the Holt testimony to the side, isn't the evidence against your client significantly stronger than in the cases you cite, Riley Brown and Alcala? We have his involvement with stolen goods, his girlfriend's guilty plea to Berkeley, his implausible story that he found the stolen goods in the garbage bag as he was walking the dog in the neighborhood that night. Isn't there sufficient evidence here against him? Well, Judge Nelson, I don't think so, and I think that three people at least have agreed with that position. One, as the trial transfer reflects, and I've cited it in my opening brief, the trial court itself questioned the prosecution and said, there seems to be overwhelming evidence of the possession of stolen property, there seems to be overwhelming evidence of the impersonation, but I just don't see the evidence as to the actual burglary. Where is the evidence that this man entered the home at the time you're saying, or at any time? There is no evidence as to that. And the prosecution's response to that was, Judge, we have one witness, a neighbor, and she has a very sharp or keen ear, and she overheard the appellant right outside her apartment around 810 to 830, just when the burglary was taking place. That was their evidence. Holt's testimony was it. Second, I think that just based on the prosecution's own answer, it seems somewhat of an indirect admission that there was no other evidence that was offered by the prosecution to respond to that question by the trial judge. When the trial judge asked that, the prosecutor said, well, there is a key witness, and the witness is this neighbor who heard that. Second, the federal magistrate judge found the same thing, found that this case was a very weak case against the appellant, but that there was no prejudice because the appellant's time lapse would not have coincided, or his alibi witness would not have coincided, with when he was not supposed to be at the burglary, which is just factually incorrect. Because if we believe the alibi witness, Peters would have testified that the appellant was at the bar from 8 to 830. If the jury believes that the appellant was there until 830, there's a 20-minute trial time, which is something else that counsel didn't bring up at trial. There's a 20-minute time between the bar and the home. That places the appellant at the house at 850. The victim in this case says that he left his house at 715 and came back at 845. I thought he said 9 o'clock. No, Your Honor. I've read that in the people's response. The people's response, the factual statements from the people's response are based on the lower court's opinions. If you look at the actual transcripts, you see that the victim in this case, Mr. Roberts, said that he had left his house around 710, 715, and returned an hour and a half later. 710 or 715 means 840 to 845. I think that at some point, he also discusses that it was approximately at 9 o'clock, but he does state that he came back an hour and a half later, so that would have been 845. I think that what the lower court and what the district court missed was that the central issue here, just like it was in Alcala and just like this court recently resided in Riley, actually it was December of last year, the key issue is credibility. And as the court in Riley said, it is a race for the hearts and minds of the jury. And in this case, had the jury believed Peters, then they would have believed what the appellant had testified to. And we know that the jury was focusing on exactly that issue because the jury sent out a note, which is Exhibit A on the excerpt of record, and the note says, what time did Mr. Willard, the defendant, leave the Imperial Beach Bar? And the answer was, you have all the evidence, there's nothing further to give you. Well, the problem was that Alan Peters' testimony was not introduced despite the fact that appellant's trial counsel knew about him. He just failed to call him. And the reason, according to the appellant's declaration, that he failed to call him was because appellant's counsel thought that the people's case, that the state's case was so weak that it was just unnecessary to call an alibi witness, which seems ridiculous at this point. The ridiculousness of that would go to the deficiency prong, though not to the prejudice prong. That shows that he used bad judgment in making that decision, but it doesn't really go to the question of prejudice. Well, the only reason I think it does go to the question of prejudice is because, as Judge Nelson mentioned, wasn't this an overwhelming case? I think no one thought it was an overwhelming case as to the burglary. It seems ironic to rely on the judgment of the very lawyer you say had no good judgment to say that the prosecution's case was weak. Your Honor, I'm not relying on that. I mean, I'm relying, one, on the evidence, that there was no evidence as to the burglary. Two, I'm relying on the state court's own questioning of the prosecutor before the case to establish that the evidence against him was very weak. And I guess as a side note, I even think that his own counsel, despite the fact that he was deficient, also believed that the evidence was weak. I mean, I don't think that solely because his trial counsel's position was that the case was weak, he hadn't called the key alibi witness. I don't think that that's sufficient to establish the prejudice, but I think that there's other sources that also support that. I would like to reserve, I guess, the minute that I have. Thank you. May it please the Court, Jonathan Lynn, Deputy Attorney General representing the people of the State of California. The simple fact is that Appellant cannot show that the state court decision was unreasonable when it determined that there was no reasonable probability that the results of Appellant's trial would have been different if his lawyer had called Mr. Peters. There are three key factors that the jury had before it in this unanimous verdict that Appellant was guilty of the burglary. First, there was an incredibly strong chain of circumstantial evidence that tied him to the burglary. Second was the fact that Appellant could have been at the Thomas' house between the time they left around 720 and the time they returned around 850. And third is the fact that Mrs. Holt, the neighbor, heard Appellant and his girlfriend arguing outside the Thomas' house sometime between 720 and 850. And even if Peters had testified that he saw Appellant at the billiards club in Imperial Beach at 815 that night, it negates none of those three factors. And Appellant cannot show that he was prejudiced in any way. As for when he was at the billiards club... Well, it doesn't negate them, but doesn't it certainly call into question the accuracy of what the neighbor heard? In other words, if a neutral person not related to the defendant had said, I was at another location with this person doing something else during a chunk, at least a large chunk of the crucial time, wouldn't that have enabled the lawyer to say, well, you know, maybe the neighbor misheard? Didn't see them. Maybe they heard a different set of neighbors arguing. Not that anybody was lying, but wouldn't that have cast some doubt on some of the evidence? The only thing it could have cast a doubt on is when she heard them arguing, not if. It's a very small cottage area where there were six cottages and they all knew each other very well. I didn't see them. No, she didn't, but she said she heard them. The window was open. I understand that, but we all make mistakes, so wouldn't it have given a pretty different arrow to the quiver for the defense lawyer to have had that to argue against the auditory testimony? No, because even if the defense then had argued that she testified that she heard them somewhere between 8.10, 8.15, 8.30, and then if he had left the club at 8.15 and we assume that he's correct that it took 20 minutes to get back, he might have heard them arguing at 8.35. I don't think that strengthens the defense's case much to say. I thought he had declared that he would say that they were there until 8.30. What he initially says is he says somewhere in the range of 8.00 to 8.30. Then when he specifically narrows it down, he says, and the quote is, all I can say is I saw them in the dartboard area for about 15 minutes and they were definitely there at 8.15 p.m. That's in Alan Peter's declaration. So if the 8.15 is at the beginning, it would be 8.30. Well, he's saying that the last time he can definitely say that he saw them there was 8.15, not that that was the first time he saw them there. He said because the dart game was supposed to start at 8 o'clock that night. And when it appeared nobody was going to that there wasn't enough players to play, that's when people left. So he said that they were there before and that the last time you can definitely pin them there was 8.15. And if you assume then that it takes 20 minutes to get back, that puts him at 8.35. The crime happened sometime before 8.50, which still leaves him plenty of time to have committed the crime and does not defeat the argument at all. And it's not really likely that even if you were to tell the jury that, oh, she says she heard them at 8.30 and this shows that she might not have heard them until actually 8.35, that five minute differential, that small gap, is not going to be enough to reasonably increase the likelihood that the jury is going to change its entire verdict. And particularly given the circumstantial evidence in this case, appellant tries to make the claim that, oh, the evidence is weak and the court mentioned the evidence is weak. But whereas the direct evidence might have been weak, the circumstantial evidence was very strong. And circumstantial evidence carries the same weight as direct evidence or any other type of evidence. And when you look at the spring, I mean, it's fairly damning. Someone comes into his house between the Thomas's house between 7.20 and 8.50 while they're gone, breaks in, takes their CDs and takes their jewelry. The next day, appellant is using a fake ID to sell those CDs. And some of the jewelry is found in appellant's girlfriend, who's a co-defendant, in her car. And then when the police go into appellant's house, they find the stolen CDs. Not to mention appellant twice fled the state when he was supposed to appear in court going to Pennsylvania. And the last time he actually told Officer Hendren, the officer that apprehended them, that he had seen a TV show about how hard it was for the police to find people who were out on warrants. And his quote was, I figured you guys would never have come and get me for this. So you have this very damning string of circumstantial evidence which tie them to the crime. So even if there's not direct evidence, there was plenty of evidence. And you take that, you take Holt's testimony, and you take the fact that even his own proposed alibi witness was still going to leave at least a 15-minute gap where he could have committed this crime, you have more than enough for the jury to have found the verdict they found. And you can't say that the state court was unreasonable in determining that there's no prejudice. So given the fact that Peter's saying that he saw appellant in the Imperial Beach at 8.15 is not at all inconsistent with appellant being at the Thomas' house between 7.20 and 7.50, there's no prejudice in this case in failing to call him, and the judgment must be affirmed. Well, let me just ask. If they had called him, he wouldn't necessarily have to prove that Willard was innocent, but wouldn't it have had some impact on the jury's view of Willard's credibility? No, because his key defense is that I wasn't there at all. And what this guy was going to come testify to was that I can only say he wasn't there for some of the time. And if anything, it could have helped the prosecution's case because now a good prosecutor can point out in closing that even his own alibi witness can't account for him for 15, 20 minutes. And the good prosecutor would point out that under both sides' theory of the case at that point, it left time for him to be there and to have committed the crime. So if anything, it could have actually helped the prosecution to highlight that there was that gap, even with his own star alibi witness. Unless this Court has any further questions, I submit. Thank you. We do have some rebuttal time remaining. Judge Nelson, I think that the last question focuses in on its reasonable probability. And the fact is that if Peters had been believed by the jury, the appellant's credibility would obviously have been bolstered. The differences or the vagueness as to time this Court in Alcala held on footnote 4, we have previously found prejudice when counsel failed to present a testimony of an alibi witness, even though their testimony was vague with regard to time. It is interesting to hear the State's response that Peters' testimony should be locked in at 8.15, but that Holt's testimony, 8, 8.10, 8.15, 8.30, that seems to be irrelevant. The bottom line is that Peters would have made a difference. And as the court in Riley held, the district court and all the lower courts there failed to uphold the habeas, and this Court found that the lower courts had failed to attach sufficient weight and significance to the fact that to the credibility of this witness when his trial counsel presented the alibi witness was crucial and the defendant was prejudiced in those cases. Thank you. Thank you, counsel. The case just argued is submitted. And our next case on this morning's docket is United States v. Torello. And whenever counsel are ready, they may begin. I just have a moment to take a walk.  Thank you.
judges: Gibson , D.W. Nelson, Graber